DOMINICK BUTTI *v.* UNITED STATES (No. 5041)*

United States Court of Customs and Patent Appeals, July 14, 1961

*Brooks & Brooks* (*Thomas J. McKenna*, of counsel) for appellant.
*William H. Orrick, Jr.*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Samuel D. Spector*, trial attorney, of counsel) for the United States.

[Oral argument April 6, 1961, by Mr. McKenna and Mr. FitzGibbon]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

RICH, Judge, delivered the opinion of the court:

This is a reappraisement appeal from the judgment of the Second Division, Appellate Term, A.R.D. 119, affirming the judgment of

*C.A.D. 778.

[1] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28, United States Code.

the trial court, Reap. Dec. 9416, which held that the importer had failed to overcome the presumption of correctness attaching to the values found by the appraiser and that the statutory values are the appraised values.

The importations are accordions, imported from Italy and entered at various unit prices. They were appraised on the basis of export value for *similar* merchandise, section 402(d), Tariff Act of 1930. The importer contends that the accordions should be appraised at the entered value on the basis of foreign value, Section 402(c), or export value, Section 402(d), for *such* merchandise.

At the initial trial before the single judge, the importer primarily relied upon an affidavit executed by the exporter, Antonio Butti, to establish a statutory value for *such* merchandise,[2] additionally relying on the oral testimony of a single witness who inspected the importations to show that the accordions in issue were used and shopworn. One other affidavit of record shows that such merchandise had been sold to at least one purchaser in Italy during a 6 months period a year prior to the importations at bar. Numerous exhibits were offered by the Government to establish an "unusual course of business" by the Italian exporter, Antonio Butti, and his son Dominick Butti, the American importer.

The trial judge found (Reap. Dec. 8480) that the Government's evidence established that the exporter confined his sales for export to

---

[2] The relevant portions of that affidavit read:

6. That during the months of October, November and December 1950, he sold from the stock he acquired at the time of purchase of Italfisa, the followin [sic] accordions to Dominick Butti Accordion School and Repairs, 154 Park Row, New York, N.Y., at the prices shown alongside each type:

| Type | | No. Sold | Price Per Each |
|---|---|---|---|
| Fisarmoniche | 41/120/4/5/9/3 | 8 | $45. 00 |
| " | 41/120/4/5/13/5 | 8 | 45. 00 |
| " | 41/120/4/5/15/5 | 2 | 45. 00 |
| " | 41/120/3/5/2 | 4 | 35. 00 |
| " | 41/120/3/5/2/1 | 1 | 30. 00 |
| " | 41/120/4/5/5/1 | 2 | 40. 00 |
| " | 41/120/4/5/5/1 | 2 | 35. 00 |
| " | 41/120/4/5/15/1 | 1 | 45. 00 |
| " | 41/120/3/5/1 | 1 | 25. 00 |
| " | 25/24/2/4 | 3 | 12. 00 |
| " | 21/8 bassi | 3 | 10. 00 |

7. That the principal market in Italy for accordions during the period of these shipments was Castelfidardo, Ancona, Italy.

8. That from his knowledge of and experience in the accordion markets in Italy he knows that the price of accordions is not affected by the number purchased in the ordinary cours [sic] of trade.

9. That during the summer and fall of 1950 he freely offered for sale the shop-worn and damaged accordions, acquired at the time of purchase of Italfisa, in the market of Castelfidardo and in other markets in Italy for home consumption and for export to all countries, including the United States, at the prices shown above in paragraph 6 and that inclosed is a sworn statement from Vignoni Giovanni, one of the purchasers of such accordions.

10. That from his knowledge and experience in the accordion markets of Italy he knows that no other similar shop-worn and damaged accordions similar to those mentioned above were offered for sale during the summer, fall and winter of 1950.

the United States to the importer herein and that such a course of conduct was "an absolute bar for finding plaintiff's entered values as the export values." As to foreign value, the single judge was of the opinion that the exporter's affidavit merely recited ultimate facts, opinions and conclusions, failing to establish "evidentiary facts" upon which a finding of foreign value could be based. During the trial, the Government had moved to dismiss on the ground that "he [the importer] has failed to make out a prima facie case; * * *." Decision on that motion having been reserved, the judge, in his opinion, denied it, apparently because he was of the opinion that he could not, merely by dismissing, find a value as the statute (28 U.S.C. 2631) required.

Review was sought and it is the opinion of the Second Division, Appellate Term, A.R.D. 73, and the judgment entered thereon that give rise to the questions now before us. The Second Division found that the trial judge erred in admitting the Government's exhibits over the importer's objection that they were irrelevant and in his reliance on those exhibits to establish that the exporter "sold exclusively" to his son, the United States importer. It also was of the opinion that, with respect to the exporter's affidavit, the trial judge erred in failing to give weight to the "uncontradicted" statements made therein. In so reversing the trial judge, the Second Division said:

An examination of the exhibits offered by the * * * [Government] in the nature of *unauthenticated and unconnected* so-called correspondence discloses nothing which could be construed as sufficient to establish that the Italian exporter sold and/or offered for sale shopworn and damaged accordions, such [as] and/or similar to those here involved, to the appellant herein exclusively. [Emphasis ours.]

The Second Division also said that Exhibit 1, the Antonio Butti affidavit, "makes a *prima facie* case in favor of appellant" and that the trial judge "discarded the only legal evidence, collective exhibit 1, as to value." The case was remanded for "further consideration upon the record before it" so that "this case may be reconsidered by the trial court, in light of the observations herein made."

The Government moved for rehearing which was denied.

On remand, the single judge ordered the case restored to the calendar for clarification of the record (Reap. Dec. 9015), apparently to authenticate the Government's exhibits since he was unable to determine whether the Second Division, by the language in its opinion, considered those exhibits irrelevant or merely "unauthenticated and unconnected." The exhibits were thereupon authenticated by the importer to the trial court judge's satisfaction and he redecided the case and rendered his decision as to value (Reap. Dec. 9416), again relying on the Government's exhibits to show that the merchandise was not freely offered for sale and concluded that the plaintiff "has

failed to establish the claimed values as the proper values." Appeal was again taken to the Second Division. Again that court found the Government's exhibits inadmissible and in addition found that the trial court erred in restoring the case to the calendar (A.R.D. 119). The Second Division, relying on *United States* v. *Elliott, Greene & Co., et al.*, 28 CCPA 177, C.A.D. 141, also held that their first ruling on admissibility, whether or not that ruling was correct, had "become final and conclusive upon the parties, in the absence of an appeal timely taken" and *could not be reconsidered*. Whether the senior Butti's affidavit, importer's Exhibit 1, in itself established a prima facie case, as it had said in the previous opinion, was not specifically passed upon. Instead, the court chose to destroy its value by relying on prior inconsistent statements by the exporter [3] and found the conflict sufficient to "seriously impair" the credibility of the affiant so that Exhibit 1 was "entitled to little, if any weight," thereby finding the record insufficient to establish the importer's claim. The decision of the trial court was therefore affirmed.

Neither the admissibility of the Government's exhibits nor the propriety of restoring the case to the calendar by the trial judge has been presented here. The importer contends, however, that the Second Division was, by virtue of its previous finding, without "jurisdiction" to reconsider whether Exhibit 1 constitutes a prima facie case in favor of the importer. This is so, he says in his assignment of errors, because the previous finding "had become, under *United States* v. *Elliott, Greene & Co.*, 28 C.C.P.A. (Customs) 177, C.A.D. 141, the settled law of the case." Importer also argues that the Second Division disregarded what it had previously found to be the "only legal evidence of value in the case." Additionally, the importer contends that it was error for the Second Division to have relied on statements made in the consular invoices to impeach the credibility of the affiant, the senior Butti, as those invoices had not been offered and admitted in evidence.

In support of the proposition that the Second Division was bound by its own prior holding that the importer had made out a prima facie case, appellant relies primarily on the *Elliott, Greene* case, supra, a reappraisement case. There, in a first appeal, certain Government exhibits had been excluded from the record on the ground that they had never been certified in accordance with section 501 of the Tariff Act of 1930. The case was remanded to the single judge for the purpose "of deciding the same on the record as made with the two reports excluded." On remand, the Government had moved that the

---

[3] The affiant of importer's Exhibit 1 had stated in the consular invoices that the "merchandise [was] exclusively manufactured for export" and had answered "no" to the question "Is such or similar merchandise offered or sold in the home market for home consumption?"

case be reopened for the purpose of certifying its exhibits. The motion was denied and on appeal the Government assigned as error the trial court's denial of the motion. That assignment of error was not passed on by the Appellate Term. However, during the argument of the case before this court the question arose as to whether the "first judgment of the appellate division became a final judgment because no appeal was taken therefrom to this court." This court was of the opinion that by virtue of the specific remand instructions, the specific finding on admissibility, and the failure by the Government to take an appeal to this court from that decision on admissibility, the "law of the case as made in the first decision of the appellate division * * * became final and conclusive upon the Government, and an appeal from the subsequent judgment of the appellate division cannot be used to raise any alleged errors in the former judgment."

In the case at bar, the Second Division relied on the *Elliott, Greene* case to preclude a reexamination of the admissibility of the Government's exhibits and the admissibility of those exhibits is not raised here. Appellant argues that the same reasoning should apply with equal force to the Second Division's finding that importer's Exhibit 1 made out a prima facie case in his favor and the finding should be conclusive since the Government failed to take an appeal.

We find it unnecessary to pass on the merits of appellant's argument that the Second Division was *precluded*, by law, from reconsidering its finding as to the existence of a prima facie case. On reading the first opinion of the Second Division, in the light of the rest of the record, it is not clear to us what was meant by their finding that Exhibit 1 constituted a "prima facie" case. It is not clear whether they considered Exhibit 1, in and of itself, sufficient to entitle the importer to judgment in his favor or whether that exhibit could constitute "substantial evidence" should the trial judge find in favor of the importer on remand. The expression "prima facie case" has certain inherent ambiguities. See Wigmore on Evidence, 3d Ed., § 2494 (1940). The Government, in its "Memorandum in Support of Motion for Rehearing," specifically questioned the propriety of the remand, saying:

As this Court [Appellate Term] had determined the weight to be given to the above evidence contrary to the weight given by the trial Court, and has in effect excluded the Government's evidence, this Court should have found a statutory value under the authority of the case of *United States* v. *F. W. Woolworth Co. et al.*, 22 C.C.P.A. (Customs) 184, T.D. 47126. It was the duty of this Court so to do rather than to remand for a reconsideration of evidence already fully considered by the Court.

Since the Second Division failed to so find value for the importer, we think it is reasonable to assume that they were not then of the opinion that Exhibit 1 was sufficient in and of itself for them to find the value claimed by the importer.

As to appellant's second point, the only authority to which we have been referred for the proposition that consular invoices, not having been "admitted" in evidence "may not be considered by the court," is *W. T. Grant Co.* v. *United States*, 38 CCPA 57, C.A.D. 440. It was a classification protest involving "cotton fabric and rayon gloves" which had been classified as gloves "made of fabric knit on a warp knitting machine." The importer claimed classification as gloves "made of woven fabric" and attempted to support his claim by statements made at the foot of a manufacturer's invoice attached to the consular invoice and by a typewritten statement attached to said manufacturer's invoice. Those statements were the only evidence introduced by counsel for either side and at the trial the Government objected to the admission of "any statements contained on the invoices or other papers with respect to this merchandise." This court found that since the statements were sought to be relied on to prove the truth of the matter stated therein, they were clearly inadmissible for that purpose as hearsay. Since the Government had timely objected to their use for such purpose, and since there was no other evidence in the record, the court held the importer had failed to establish the correctness of the claimed classification.

We do not agree with appellant that "it follows" from the *Grant* case that the consular invoices, in order to be relied on, must have been offered and admitted in evidence. The *Grant* case involved a classification protest and, as noted in the opinion therein, "Congress has made admissible certain secondary evidence in reappraisement cases," citing 28 U.S.C. 2633, but not in classification cases. Additionally, in the *Grant* case the invoices were relied on to establish the truth of the statement therein whereas here they have been relied on only to show inconsistency in the statements of affiant Butti. They were relied on merely to show that the affiant runs hot and cold—says one thing one time and the contrary thing another. We are not concerned with which statement is true—for clearly both cannot be true—but only with the fact of inconsistency, which affects the probative value of the evidence.

The only remaining question is, possibly, whether the consular invoices were part of the "record" so that the Second Division could properly rely upon them. The importer does not appear to contend that they are not. In the *Grant* case, on which he relies, the court said:

The invoice, of course, as part of the official file of papers in a protest case always remains part of the official record in the case, 19 U.S.C. 1515, 19 C.F.R. 17.3 (and so in reappraisement cases, 19 U.S.C. 1501(a), 19 C.F.R. 17.7; 19 U.S.C. 1402(b); see 28 U.S.C. 2633) * * *.

For the limited purpose of impeaching credibility, the Second Division properly considered the effect of the inconsistent statements

found in the consular invoice and the importer's Exhibit 1. ▮ Our jurisdiction in reappraisement cases is limited to deciding "questions of law only" (28 U.S.C. 263). Since appellant's case depends on the weight accorded Exhibit 1 and since the decision below that Exhibit 1 is "entitled to little, if any weight" is supported by substantial evidence, appellant has failed to show that, as a matter of law, the Second Division erred in affirming the single judge's judgment on value. The judgment is, therefore, *affirmed*.